**In the United States District Court
for the District of Kansas**

————————

Case No. 24-cr-40031-TC

————————

UNITED STATES OF AMERICA,

*Plaintiff*

v.

ISABELLA ESTRELLA FIGUEROA,

*Defendant*

————————

## MEMORANDUM AND ORDER

Isabella Estrella Figueroa is charged with one count of possession of fentanyl with the intent to distribute in violation of 21 U.S.C. § 841(a)(1). Doc. 1. She moves to suppress the evidence uncovered following a traffic stop. Doc. 19. For the following reasons, Figueroa's motion is denied.

## I

## A

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV; *see also New Jersey v. T.L.O.*, 469 U.S. 325, 334 (1985) (recognizing incorporation against the states). Absent a recognized exception, the Fourth Amendment prohibits suspicionless seizures or warrantless searches that violate a person's objectively reasonable expectation of privacy by invading a constitutionally protected space or thing. *United States v. Jones*, 565 U.S. 400, 406 (2012); *see also United States v. Ackerman*, 831 F.3d 1292, 1307 (10th Cir. 2016). Traffic stops are seizures for Fourth Amendment purposes, *United States v. Pettit*, 785 F.3d 1374, 1379 (10th Cir. 2015), and in a traffic stop "a passenger is seized as well and so may challenge the

constitutionality of the stop." *Brendlin v. California*, 551 U.S. 249, 251 (2007).

A warrantless stop is valid where the officer has reasonable suspicion to believe that a traffic violation occurred. *Kansas v. Glover*, 589 U.S. 376, 380 (2020). In particular, the officer must have "a reasonable articulable suspicion that 'this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction.'" *United States v. Martinez*, 512 F.3d 1268, 1272 (10th Cir. 2008) (quoting *United States v. Ozbirn*, 189 F.3d 1194, 1197–98 (10th Cir. 1999)). The stop also must be "reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Morales*, 961 F.3d 1086, 1090–91 (10th Cir. 2020).

Ordinarily, the traffic stop is circumscribed by the traffic violation giving rise to the initial encounter. That means officers may conduct unrelated inquiries during a stop only if that conduct does not prolong the stop. *United States v. Frazier*, 30 F.4th 1165, 1173 (10th Cir. 2022) (citing *Rodriguez v. United States*, 575 U.S. 348, 355 (2015)). For example, it is accepted that officers may reasonably inquire as to the driver's license, automobile's registration and proof of insurance, identity of the individuals, and driver's travel plans. *United States v. Cates*, 73 F.4th 795, 806 (10th Cir. 2023) (internal citations omitted). But once the mission of the stop has concluded, the motorist is generally free to leave. *Morales*, 961 F.3d at 1091.

There are, of course, justifications for continued detention. For example, the driver may consent to further questioning. *United States v. Ledesma*, 447 F.3d 1307, 1315 (10th Cir. 2006). Or an officer may develop reasonable suspicion of other illegal activity distinct from the traffic violation. *See United States v. Bradford*, 423 F.3d 1149, 1157–58 (10th Cir. 2005). "To satisfy the reasonable suspicion standard, an officer need not 'rule out the possibility of innocent conduct,' or even have evidence suggesting 'a fair probability' of criminal activity." *Pettit*, 785 F.3d at 1379 (internal citations omitted). A non-exhaustive list of factors that the Tenth Circuit has recognized as supporting reasonable suspicion include nervousness, unusual travel plans, criminal history, and travel route. *See United States v. White*, 584 F.3d 935, 950–52 (10th Cir. 2009); *see also Pettit*, 785 F.3d at 1380–83 (holding that no one factor is determinative of reasonable suspicion of illegal activity). Accordingly, an officer who develops reasonable suspicion of illegal activity "may initiate an investigatory detention even if it is more likely than not that the individual is *not* involved in any illegality." *Pettit*, 785 F.3d

at 1379–80 (quoting *United States v. Johnson*, 364 F.3d 1185, 1194 (10th Cir. 2004)) (emphasis in original).

As a general matter, the authority to detain a motorist while investigating reasonable suspicion does not include the right to search the vehicle. Instead, a search of the vehicle must be justified by, for example, probable cause. *United States v. Forbes*, 528 F.3d 1273, 1277–78 (10th Cir. 2008); *see also United States v. Pinder*, 121 F.4th 1367, 1371 (10th Cir. 2024) (allowing contemporaneous search incident to a lawful arrest). "Probable cause to search a vehicle is established if, under the totality of the circumstances, there is a fair probability that the car contains contraband or evidence." *United States v. Phillips*, 71 F.4th 817, 823 (10th Cir. 2023) (quoting *United States v. Vasquez-Castillo*, 258 F.3d 1207, 1212 (10th Cir. 2001)). When an officer smells drugs, such as marijuana emanating from the vehicle, that observation is "entitled to substantial weight in the probable cause analysis and can be an independently sufficient basis for probable cause." *United States v. West*, 219 F.3d 1171, 1178 (10th Cir. 2000). Additional observations—such as nervous behavior and vague travel plans—obviously strengthen the existence of probable cause. *See United States v. Ozbirn*, 189 F.3d 1194, 1200 (10th Cir. 1999).

**B**

On February 4, 2024, Geary County Sheriff's Deputy Kevin Albrecht was reviewing data from automatic license plate readers.[1] Albrecht was intrigued by the travel history of a white Buick with Kansas plates. He noticed that the Buick had traveled west through De Beque, Colorado, on February 1. It continued south through Jean, Nevada, the next day. It then returned north through Jean, Nevada, on February 3 and headed east on Interstate 70 toward Kansas on February 4. Albrecht also noticed that the Buick had previously made similar interstate trips and that its registered owner had been arrested for possession of a controlled substance. Based on these facts, Albrecht set up

---

[1] The following facts were found based on the witnesses' testimony and the evidence produced at the suppression hearing.

an alert to be notified when the Buick entered Geary County because he intended to stop it.[2]

Albrecht received an alert when the Buick entered Geary County. He positioned himself on Interstate 70 so that he would notice the Buick when it drove past him. As the Buick went by, Albrecht pulled out behind it. He testified that he believed the Buick was following the vehicle in front of it too closely given the rainy road conditions. Believing that this was a violation of K.S.A. § 8-1523(a), which prohibits the unreasonable and imprudent following of another vehicle, Albrecht pulled over the Buick.

Defendant Figueroa was driving the Buick and Gilberto Lopez Perez was in the passenger seat. Albrecht approached the Buick's passenger side and immediately noticed a strong odor of air freshener and saw a couple of air fresheners in the vehicle. He asked Figueroa to sit in his patrol car while he issued her a warning for "following that car too close." In the patrol car, he asked Figueroa where she had been, and Figueroa replied that she had been visiting family in Wichita, Kansas. Albrecht knew this to be untrue: He knew that the Buick was not coming from Wichita, but from Colorado on Interstate 70. Albrecht then called in Figueroa's license and the Buick's information to dispatch and requested a drug dog. Albrecht continued to question Figueroa about her travel plans, and she stated that she had spent two nights in Wichita. Albrecht also testified that he noticed that Figueroa was breathing heavily and seemed concerned.

Albrecht left Figueroa in his patrol car and went to speak with Lopez, who was still in the Buick. He asked Lopez about his travel history and plans. Lopez responded with an entirely different story from Figueroa's, claiming that he had been in Salina, Kansas.

---

[2] The Fourth Amendment generally forbids roving patrols. *Almeida-Sanchez v. United States*, 413 U.S. 266, 273 (1973). But pretextual stops are not impermissible under the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 811 (1996). Moreover, "[i]t is irrelevant that the officer may have had other subjective motives for stopping the vehicle." *Phillips*, 71 F.4th at 822. Albrecht expressly admitted that he decided he would stop the Buick and only followed it in the hopes of identifying a traffic violation that would provide him with reasonable suspicion to initiate a traffic stop.

Albrecht then returned to his patrol car and gave Figueroa a warning. As Figueroa was getting out of Albrecht's patrol car, Albrecht said that he was "done with the traffic stop" but that he wanted to ask her more questions. Figueroa said that was alright. Albrecht then explained that part of his job was investigating human and drug trafficking. He asked Figueroa whether she had any weapons, drugs, cash, or a person in the trunk. Figueroa said no, and Albrecht asked whether he could "verify that." When Figueroa did not consent to a search, Albrecht stated that he was detaining Figueroa to wait for a canine. He explained that Figueroa looked "like [she was] in extreme distress," and asked if she was "being forced to do something that [she did not] want to." Figueroa said she was just tired.

Albrecht *Mirandized* Figueroa and continued to question her. He asked her whether there was any marijuana in the car, and Figueroa said there was. Albrecht then searched the car and located a heat sealer and a large roll of cash, but no marijuana.[3] He also noticed a strong chemical smell emanating from the Buick's wheel well. Along with his partner, Albrecht then took the Buick back to the Sheriff's department. He explained to Figueroa that there was a "chemical smell" and that he thought there was "stuff concealed inside." At the Sheriff's department he searched the Buick again and found fentanyl pills and marijuana.

The Government indicted Figueroa on one count of possession of fentanyl with the intent to distribute. Doc. 1. Figueroa now moves to suppress the evidence seized from the Buick on two grounds, claiming that Albrecht lacked reasonable suspicion to initiate the traffic stop and that he unreasonably prolonged the stop. Doc. 19.[4] The Government opposes each argument. Doc. 25.

**II**

---

[3] Deputy Cayla Da Giau arrived on scene with a drug dog, but she did not deploy the dog because Albrecht concluded that he had probable cause to search the Buick on account of Figueroa's admission that there was marijuana in it.

[4] All document citations are to the document and page number assigned in the CM/ECF system.

Albrecht had reasonable suspicion to stop the Buick. And he did not unreasonably extend the stop. Accordingly, Figueroa's motion is denied.

**A**

Figueroa first argues that the stop was unlawful. Doc. 19 at 14. That argument fails because Albrecht reasonably suspected the Buick of violating a Kansas traffic law.

Albrecht's testimony and the video of the traffic stop confirm that he had an objective basis to suspect that the Buick was following the car in front of it too closely.[5] Kansas law notes that drivers "shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway." Kan. Stat. Ann. § 8-1523(a). Albrecht explained that he used the two-second rule to determine the Buick's following distance. In particular, he testified that he used a static spot on the road to measure the distance between the Buick and the vehicle in front of it. He testified observing that, at times, the Buick was at a following distance of less than two seconds. Although the record suggests multiple times that the Buick was three or more seconds behind the vehicle in front of it, Albrecht's testimony is sufficient to create reasonable suspicion under Kansas law that the driver of the Buick was violating section 8-1523(a). *State v. Moore*, 154 P.3d 1, 7 (Kan. 2007); *United States v. Hunter*, 663 F.3d 1136, 1143 (10th Cir. 2011).

Figueroa's counterargument is unpersuasive. Doc. 19 at 5. The strongest argument she makes is that the video evidence of the stop

---

[5] The Government argues that Albrecht also relied on violations of K.S.A. § 8-133(c), because the state name in the Buick's license plate was partially obstructed, and of K.S.A. § 8-1703(a), because the Buick did not have its headlights on. Doc. 25 at 10, 12. But the evidence offered at the suppression hearing does not support these arguments. As to section 8-133(c), that statute cannot reasonably be read to prohibit the covering of the state name in a license plate. *State v. Beck*, 577 P.3d 119, 126 (Kan. 2025) (holding as much, albeit after the stop). And as to section 8-1703(a), Albrecht offered no credible testimony that visibility on the road was limited to less than 1,000 feet or that he saw the Buick's wipers in continuous use. *See* Kan. Stat. Ann. 8-1703(a)(2)–(3) (requiring headlights when "persons and vehicles on the highway are not clearly discernible at a distance of 1,000 feet ahead" and "when windshield wipers are in continuous use").

contradicts Albrecht's assertion: It shows that the Buick was roughly three seconds (and sometimes more) behind the vehicle in front of it when it passed by Albrecht's patrol car. As a result, Figueroa argues that she did not violate section 8-1523(a) because the minimum following distance is two seconds rather than three. *Id.* at 5 n.10. Figueroa's logic is that because the Tenth Circuit approved the use of the two-second rule in *Hunter*, a three-second following distance is necessarily not a violation of section 8-1523(a). Doc. 19 at 5 n.10 (citing *Hunter*, 663 F.3d at 1143, which stated that the Tenth Circuit had "specifically approved the two-second rule as supporting reasonable suspicion to effect a traffic stop under § 8–1523(a)").

This argument is a *non sequitur.* That two seconds or under provides reasonable suspicion does not mean that more than three seconds precludes an officer's finding that reasonable suspicion of a violation exists. *Contra* Doc. 19 at 5. Section 8-1523(a) calls for a following distance that is "reasonable and prudent, having due regard for the . . . condition of the highway." Kan. Stat. Ann. § 8-1523(a); *see Moore*, 154 P.3d at 7 (noting that the Tenth Circuit's two-second rule was approved "in light of" "speed, following distance, road conditions, and traffic conditions," namely, overcast weather and the driver's high rate of speed). As Albrecht testified (and his dash cam footage showed), conditions on the interstate highway were not ideal because it was raining and the residual water on the roadway was being thrown up by the tires of the vehicles. Even if the Buick had consistently traveled three seconds behind the car in front of it, Albrecht's conclusion that the conditions on the road warranted a following distance greater than two or even three seconds was not unreasonable. *See United States v. Vercher*, 358 F.3d 1257, 1261 (10th Cir. 2004) (noting that an officer's "observations of the speed and distance alone may support an objectively reasonable suspicion that [the driver] was following . . . more closely than was reasonable and prudent under K.S.A. § 8–1523(a)").

Figueroa maintains that the video plainly refutes Albrecht's contention that the Buick was less than three seconds behind the vehicle in front of it. Doc. 32 at 4. Discerning what the video shows does not, standing alone, answer the pertinent question of whether Albrecht possessed a minimal level of objective justification to *suspect* that the Buick was following the vehicle in front of it at a distance that was imprudent given the road conditions. *See Hunter*, 663 F.3d at 1143–44; Kan. Stat. Ann. § 8-1523(a). Albrecht testified that he believed the vehicle was travelling less than three seconds behind the vehicle it was

trailing and that, in light of the road conditions, this was unreasonably close. His perception of the traffic and road conditions and what is reasonable under the circumstances is entitled to deference. *See Vercher*, 358 F.3d at 1261. Albrecht's observations may have been tainted by his initial suspicion of the Buick and ultimately not enough to convict Figueroa of violating section 8-1523(a). But that does not render the stop unreasonable; the pertinent inquiry is whether Albrecht had a "basis for a *suspicion* that a traffic violation might have been occurring." *See id.* at 1262 (emphasis in original). The confluence of the video evidence, speed of the vehicles, road conditions, and his training and experience satisfy that standard.

**B**

Figueroa also argues that suppression is required because Albrecht unreasonably extended the stop. Doc. 19 at 5 (invoking *Rodriguez v. United States*, 575 U.S. 348 (2015)). She contends that at various points Albrecht lacked a lawful basis to extend the stop. That argument fails.

As noted, a traffic stop constitutes a Fourth Amendment seizure and, as a result, must be reasonable. *United States v. Baker*, 108 F.4th 1241, 1246 (10th Cir. 2024). This means that it must be "justified at its inception and . . . the officer's actions during the stop must be reasonably related in scope to 'the mission of the stop itself.'" *Id.* (quoting *United States v. Mayville*, 955 F.3d 825, 829 (10th Cir. 2020)). In *Rodriguez*, the Supreme Court held that a traffic stop "becomes unlawful if it is prolonged beyond the time reasonably required to complete" it. *Baker*, 108 F.4th at 1246–47 (citing *Rodriguez*, 575 U.S. at 350–51) (internal citations omitted). And while there is no de minimis exception to the rule, *Mayville*, 955 F.3d at 830, the question is only whether "police diligently pursued the [traffic] investigation," *Rodriguez*, 575 U.S. at 354, and not whether they took the quickest route humanly possible to concluding the stop. *Mayville*, 955 F.3d at 827. Thus, courts are not permitted to "second-guess the logistical decisions of officers so long as their actions were reasonable and diligently completed within the confines of a lawful traffic stop[ ] . . . because reasonableness—rather than efficiency—is the touchstone of the Fourth Amendment." *Id.*

The Tenth Circuit has established a three-part test for analyzing the lawfulness of a delay under *Rodriguez*. In particular, an unlawful seizure occurs when an officer diverts from the traffic-based mission of the stop to investigate ordinary criminal conduct, does so in a way that "prolongs" (i.e., adds time to) the stop, and the investigative detour is

unsupported by any independent reasonable suspicion. *Baker*, 108 F.4th at 1248 (quoting *Frazier*, 30 F.4th at 1173). In other words, "the government prevails if the officers' actions did not divert from the traffic mission, the search was not prolonged, or reasonable suspicion existed." *Id.* An officer may extend the stop if he or she has, at a minimum, reasonable suspicion of criminal wrongdoing. *Id.* at 1247 (citing *Mayville*, 955 F.3d at 830).

Figueroa argues that there were five *Rodriguez* moments where Albrecht unlawfully extended the stop. They are as follows: at approximately at 1:03 p.m. when Albrecht asked Figueroa about her travel plans inside his patrol car; a minute later at 1:04 p.m. when he requested a drug dog from dispatch; later on when he asked Figueroa if he could ask her more questions; when he told Figueroa that he was going to get a drug dog; and when he questioned Lopez about the pair's travel plans. Doc. 19 at 6–9. But none of these actions unlawfully extended the stop.

Figueroa first argues that the travel plan questions unreasonably extended the stop because they did not relate to Albrecht's traffic mission and because Albrecht "already knew the answers." Doc. 19 at 7. That argument fails because police are entitled to ask drivers about their travel plans during the course of a traffic stop. *See United States v. Cates*, 73 F.4th 795, 806 (10th Cir. 2023) (quoting *United States v. Cortez*, 965 F.3d 827, 838 (10th Cir. 2020)) (rejecting a *Rodriguez* argument and noting that "[a]n officer may also inquire about the driver's travel plans"). There is no requirement that such questions relate to the traffic infraction under investigation. *See Cortez*, 965 F.3d at 838; *accord United States v. Pettit*, 785 F.3d 1374, 1379 (10th Cir. 2015) ("An officer may also inquire about the driver's travel plans . . . and ask about matters unrelated to the stop.") (citations omitted). But even if there was a relatedness requirement, it would have been satisfied: The questions Albrecht posed could have shed light on why Figueroa was following too closely. For instance, she could have been tired or maybe there was a medical emergency. *See Cortez*, 965 F.3d at 839. Figueroa cites no authority for the proposition that police may not ask travel-related questions if they already know about the vehicle's travel history.

Figueroa's response to those questions, in light of other attendant factors, gave Albrecht reasonable suspicion to believe that she was engaged in unlawful drug trafficking. In particular, he knew the Buick had a travel history that, based on his training and experience, was suspicious and consistent with drug trafficking. *See United States v. Hayes*, 62

9

F.4th 1271, 1279 (10th Cir. 2023) (finding that police reasonably suspected the defendant of drug trafficking when he had, among other things, "made multiple short trips between [two distant cities]"); *accord United States v. Batara-Molina*, 60 F.4th 1251, 1257 (10th Cir. 2023) ("To make such a long trip—only to stay at the destination for such a short amount of time—is also consistent with the behavior of a drug courier."). Then, when Albrecht asked Figueroa about her travel history, she lied about it. And so did Lopez, who gave a completely different story. That also gives rise to reasonable suspicion. *See United States v. Simpson*, 609 F.3d 1140, 1152 (10th Cir. 2010) (finding that evasiveness and inconsistent travel plans, along with other factors, gave rise to reasonable suspicion); *see also Pettit*, 785 F.3d at 1381 ("We have consistently held that implausible travel plans can contribute to reasonable suspicion.") (alterations omitted). In addition, Albrecht knew that Figueroa had previously been arrested for possession of a controlled substance. This, too, can contribute to an officer's reasonable suspicion of drug trafficking. *See Simpson*, 609 F.3d at 1147 (finding that criminal history, in conjunction with other factors, contributed to reasonable suspicion); *United States v. Santos*, 403 F.3d 1120, 1132 (10th Cir. 2005) (same). And Albrecht had noticed several air fresheners in the Buick and a strong odor of air freshener emanating from it. Again, the Tenth Circuit has repeatedly recognized that the presence of air freshers can be an indication of attempts to mask the odor of illegal contraband. *See Batara-Molina*, 60 F.4th at 1256. The combination of these factors provided Albrecht with reasonable suspicion that Figueroa was engaged in the trafficking of illegal narcotics and justified further inquiry. *See id.* at 1259 (affirming the district court's denial of suppression because police had reasonable suspicion of drug trafficking when the officer noticed, among other things, a strong cover odor and that the defendant had made a long trip with a short turnaround time); *Pettit*, 785 F.3d at 1383 (affirming the district court's denial of suppression where the officer suspected criminal activity based on, among other things, unusual travel plans and abnormal nervousness).

That Albrecht had reasonable suspicion precludes Figueroa's additional delay arguments. *Contra* Doc. 19 at 8–9. The rule in *Rodriguez*—that police may not unlawfully prolong a traffic stop—applies only when their investigative detour is "unsupported by any independent reasonable suspicion." *Frazier*, 30 F.4th at 1173. Figueroa's motion to suppress based on *Rodriguez* fails because reasonable suspicion existed after she falsely answered Albrecht's travel related questions. *See Baker*, 108 F.4th at 1248.

And Albrecht's investigation into drug trafficking provided him probable cause to search the Buick. As noted, Figueroa admitted to Albrecht that there was marijuana in the Buick.[6] This is a violation of Kansas law that justifies a search of the vehicle. Kan. Stat. Ann. § 21-5706; *see United States v. Ross*, 456 U.S. 798, 825 (1982) ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."). And Deputy Ali Huizar, who arrived on scene to assist Albrecht, noted that she smelled marijuana as she approached the Buick to speak to Lopez.[7] *See United States v. McGehee*, 672 F.3d 860, 869 (10th Cir. 2012) (quoting *United States v. West*, 219 F.3d 1171, 1178 (10th Cir. 2000)) ("An officer's detection of the smell of drugs . . . in a car is entitled to substantial weight in the probable cause analysis and can be an independently sufficient basis for probable cause."). Additionally, Albrecht discovered a heat sealer, a strong chemical smell in the trunk, and a large roll of cash in the glove box. This gave him further probable cause to believe that there were drugs in the car. *See United States v. Phillips*, 71 F.4th 817, 823 (10th Cir. 2023) (explaining that the smell of drugs can give rise to probable cause to search); *United States v. Lopez*, 777 F.2d 543, 551 (10th Cir. 1985) (holding that the smell of an "ether-like substance" gave rise to probable cause); *Hoskins v. Withers*, 92 F.4th 1279, 1296 (10th Cir. 2024) (explaining that large amounts of cash are indicative of drug activity).

Figueroa's claim that the officers' initial failure to find contraband while searching the Buick on the roadside precluded additional intrusions lacks merit. *Contra* Doc. 19 at 9. Probable cause becomes stale "when new information received by the police nullifies information critical to the earlier probable cause determination . . . ." *United States v. Dalton*, 918 F.3d 1117, 1128 (10th Cir. 2019). The question is whether a new fact nullifies a material fact that gave rise to the finding of

---

[6] That fentanyl—not marijuana, as Figueroa admitted—was ultimately located is beside the point. The Tenth Circuit in *United States v. Bradford*, 423 F.3d 1149, 1159 (10th Cir. 2005), recognized that a driver's admission to the possession of any contraband in the vehicle justifies a full search because "[a] reasonable officer would think that a suspect might confess to a small amount of drugs in order to avoid an investigation which would reveal a much larger amount of drugs."

[7] Albrecht testified that a prior COVID-19 infection rendered him temporarily unable to detect the odor of marijuana.

probable cause. *Id.* That Albrecht did not discover marijuana while the vehicle was parked along the road did not vitiate probable cause: Figueroa told him there was marijuana in the car; he simply was unable to locate it without additional efforts that occurred away from the roadside stop. On the contrary, the search that occurred yielded additional facts that enhanced the probable cause to search the vehicle.

### III

For the foregoing reasons, Figueroa's Motion to Suppress, Doc. 19, is DENIED.

It is so ordered.

Date: March 17, 2026                    s/ Toby Crouse
                                        Toby Crouse
                                        United States District Judge